(No. 85-CC-1713—

WILLIE WILLIAMS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 6, 1988.*

WILLIE WILLIAMS, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ, Assistant Attorney General, of counsel), for Respondent.

Raucci, J.

Claimant, an inmate in the penal system for the State of Illinois seeks recovery for his personal property which he claims was lost or converted by Respondent.

Claimant states that while a resident of the Menard Facility at Chester, Illinois, he was transferred, on or about the 23rd of February, 1984, to the Federal District Court in Chicago. At the time of this trip, his personal property was inventoried by Respondent and preserved in the personal property office. Claimant alleges that upon his return to Menard on March 7, 1984, Claimant claims that while in Cook County he was wearing personal jewelry consisting of two rings and a watch which were taken from him by "prison's officials" on or about March 1, 1984, when being transferred from the Federal facility in Chicago to the Joliet Correctional Center in preparation for his return to Menard.

Claimant alleges that his two rings and a watch were transported back to the Menard facility from the Joliet Correctional Center but were "misplaced" by Menard officials. Claimant sets the value of his lost personal property including the two rings and the watch at $1,900.00.

Claimant presented an institutional grievance to the Administrative Review Board at Menard on April 18, 1984. The minutes of the Administrative Review Board meeting contained the following:

"Findings: With regard to the personal property issue, the inmate stated that on February 24, 1984, he was taken to Chicago on Writ status. He stated that, at that time, his personal property was inventoried and he received receipts for same. He stated he believes the property was placed in the personal property office. He stated he returned to the Menard Correctional Center on March 7, 1984. At that time, Officer Ticer indicated he refused to inventory the personal property due to the amount involved. The inmate stated he was then forced to sign the personal property inventory sheet and took his property to his cell. He stated he determined his television set, his radio, a

pair of shoes, and two pair of jeans and jean jackets were missing from his personal property. The inmate stated he has since received his television set. The inmate estimated the remaining personal property at a value of approximately $150.00.

On February 28, 1984, the inmate stated he was taken from a federal institution in Chicago to the Joliet Reception and Classification Center. He stated that, at that time, his watch and two rings were confiscated. He stated the property was transferred with him to the Menard Correctional Center. He stated he has recently been advised by the Menard Administration that the property in question is now missing. He stated that both rings contained diamonds and that the watch was a Timex Quartz. The inmate is also requesting copies of receipts for his personal property."

Claimant states that his watch was later returned but was broken.

Respondent's exhibit No. 1 was the resident personal property inventory record showing a packing date of 2-23-84. Aside from the two rings and the watch claimed to have been misplaced by Respondent, Claimant lists the following property as having been converted or lost, to-wit:

1. 196 albums at $6.98 each
2. Radio, $59.00
3. One pair of shoes, $39.00
4. Two blue suits, $74.00

The inventory record of 2-23-84 is signed by Claimant immediately under the following printed declaration:

"I hereby certify that the personal property sheets I am signing contain a true and complete listing of my personal property."

The personal property inventory lists the number of "records" of the Claimant at six (6), no suits, no rings, no wristwatch and no radio.

A resident personal property inventory record dated 3-6-84 identified as Plaintiff's exhibit No. 2 and allegedly prepared at Joliet Correctional Center listed

Williams with two rings and a wristwatch number 73359, under the heading "permit items."

With respect to Respondent's exhibit No. 1 Williams stated, "I admit that the items incorporated in the personal property receipts are some of the items that belong to me." With respect to Plaintiff's exhibit No. 2, Respondent admitted that the inventory record apparently prepared at Joliet was questioned as to authenticity but admitted that the inventory record was in Claimant's personal property file.

Upon his return to Menard, Claimant alleged that a correctional officer named "Ticer" informed him that Ticer had discovered that two rings and a watch on the Joliet inventory were missing. Williams testified that he gave Ticer the receipt showing the value of the rings and the watch. Ticer was, at the time of the hearing in this case, no longer an employee of the Department of Corrections. An adjustment committee summary identified as Respondent's exhibit No. 3 revealed that Officer Ticer testified on 9-14-84 before the adjustment committee that "he didn't have any knowledge about Williams' rings." Ticer apparently denied ever having copies of receipts from Williams (see Respondent's exhibit No. 3). Williams testified that his recollection was to the effect that each of the rings was of a value of $800.00. Williams testified that he gave the receipts showing the valuation of the rings to Ticer without having first made copies of them. Williams testified that reproduction or copying facilities were available to inmates at Menard Correctional Center. Williams stated he did this because he "was under the assumption that arrangements would be made to compensate (me) on a departmental level." Williams said he had turned the receipts over to Ticer because Williams felt this

"tangible evidence" turned over to the correctional officer would be sufficient enough to substantiate the cost of the rings.

Williams testified that the original inventory at Menard identified as Respondent's exhibit No. 1 "did not accurately inventory that property." Williams testified that with respect to his watch and rings, he was allowed to keep them at Joliet until he left to be transferred to Menard. The rings and watch were taken from him March 7, 1984.

Williams testified that he had filed a substantial number of lawsuits against the State of Illinois in the Federal courts during the last 10 years. Many of those lawsuits complained about prison employees violating administrative regulations and administrative directives.

With respect to the 196 record albums, Williams testified that these 196 albums were acquired in a two-to-three month period of time prior to February 23, 1984, when Williams was taken to Cook County on a writ. Williams testified that he did not remember who boxed the 196 albums up. Williams testified with respect to an administrative review hearing in January of 1984, several months before the operative events set forth in the present claim, that he had claimed the loss or confiscation of 196 record albums. Williams had difficulty remembering his testimony or the facts concerning that administrative review hearing.

As in all cases, we are called upon to judge the credibility of witnesses. Impeachment can consist of many factors including observations of the demeanor and sincerity of witnesses, contradictions in testimony and the believability of the witness' testimony as a whole, taking into account the witness' past experiences, ability to recollect and many other factors. In the case at

bar there are substantial indications that Claimant is not believable. For example, Claimant's memory regarding certain incidents and events germane to the present claim was detailed and flawless; Claimant's memory failed him when questioned about matters that occurred before and after the scenario out of which the present claim arose that were material subjects of cross-examination. Claimant was guarded and furtive in the delivery of his testimony. Many of the Claimant's "tactics" in connection with the present case showed a high sensitivity to questions of the availability of documentary evidence and records; yet, Claimant says that he parted with the only real evidence of value as to his jewelry and watches on a trusting assumption that a single correctional officer's possession of those documents would suffice to cause the State of Illinois to remit over $1,600.00 to Claimant for his jewelry.

All in all, Claimant's case rests, in the last analysis, on the credibility of his testimony. We find Claimant's testimony to be incredible, and insufficient upon which to base an award in this case.

It is therefore ordered, adjudged and decreed that the Claimant's claim is denied.